This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellants, Hartford Fire Insurance Company and Twin City Fire Insurance Company, appeal the decision of the Summit County Court of Common Pleas, ordering arbitration. We reverse and remand.
 I.
On July 12, 1997, Dave Skolnik negligently operated a motor vehicle, causing the death of Shawn Anthony DeLorenzo, who was a passenger in Mr. Skolnik's vehicle. Mr. DeLorenzo's estate settled with Mr. Skolnik's insurer for the policy limits of $12,500. Before his death, Mr. DeLorenzo was employed by Quaker State Corporation. Hartford Fire Insurance Company and Twin City Fire Insurance Company insured Quaker State at the time of Mr. DeLorenzo's death. Quaker State does business in several states, and the insurance policy at issue provided insurance coverage for Quaker State in various states.
Martha Troutman, as Administratrix of the Estate of Shawn Anthony DeLorenzo, commenced an action in the Summit County Court of Common Pleas against Hartford Fire Insurance Company and Twin City Fire Insurance Company (hereinafter collectively referred to as "Hartford Fire"). In the complaint, Ms. Troutman alleged that Mr. DeLorenzo's estate was entitled to underinsured motorist coverage under Quaker State's insurance policy with Hartford Fire. Additionally, Ms. Troutman sought arbitration of her claim under the terms of the insurance policy.
On February 21, 2001, the trial court ordered the parties to file memoranda on the issue of whether the case should be submitted to arbitration under the insurance policy. The court also noted that the parties "agreed to file a stipulation * * * setting forth portions of the insurance policies at issue and such other evidence as is relevant to the arbitration question." Subsequently, the parties stipulated to certain facts for the purposes of determining whether the case should be submitted to arbitration. The parties stipulated inter alia that "[f]or purposes of the anticipated motions on the issue of arbitration, Plaintiff's Decedent is entitled to coverage under the Hartford and Twin City Policies pursuant to the decision of the Ohio Supreme Court inScott-Pontzer vs. Liberty Mutual Fire Insurance Company (1999),85 Ohio St.3d 660."
On April 2, 2001, Ms. Troutman filed a motion for summary judgment regarding arbitration. In her motion, Ms. Troutman argued that Endorsement 51 (form CA 21 17 12 93) of the insurance policy unambiguously mandated arbitration of uninsured and underinsured motorist claims upon written demand for arbitration by a party. Hartford Fire responded in opposition, claiming that Endorsement 51 did not apply to underinsured motorist claims in Ohio, but rather, applied only to such claims in New Hampshire. Hartford Fire asserted that, as Endorsement 51 did not apply in Ohio, the terms contained in the endorsement, including the mandatory arbitration clause, did not control; therefore, the case should not be submitted to arbitration.
Both parties attached additional exhibits to their memoranda. Hartford Fire attached affidavits, in which a senior analyst for Penzoil-Quaker State Company attested that Quaker State did not contract with Hartford Fire Insurance Company for uninsured motorist coverage in Ohio. An employee for Hartford Financial Services further attested that Endorsement 51, "an Uninsured Motorists Coverage endorsement, applies to New Hampshire coverages but not to Ohio coverages." In an order journalized on April 17, 2001, the trial court found that the parties had not followed the directions of the court, stating:
 By agreement of the parties and this Court's Order, the question of whether the issues in this case should be submitted to arbitration was presented by a Stipulation of Facts and Briefs.
 The Court notes that the Plaintiff filed a motion for Summary Judgment, which is contrary to this Court's Order, and both sides offered additional exhibits, which is also contrary to this Court's Order. The Court will consider the issue being presented only by the Stipulation of Facts and the Briefs.
Shortly thereafter, in a decision journalized on April 20, 2001, the trial court concluded that the relevant terms of the insurance policy were unambiguous and that Endorsement 51 of the policy "makes arbitration mandatory when either party makes a written demand for arbitration." As Ms. Troutman made such a demand, the trial court ordered arbitration and stayed the proceedings in the trial court pending arbitration. See R.C.2711.02. This appeal followed.
 II.
Hartford Fire asserts two assignments of error. We will discuss each in turn.
 A. First Assignment of Error THE TRIAL COURT ERRED WHEN IT ORDERED ARBITRATION, RATHER THAN TRIAL, OF APPELLEE'S UNDERINSURED MOTORIST CLAIM WHERE UNDERINSURED MOTORIST COVERAGE APPLIES BY OPERATION OF LAW, NOT AS A MATTER OF CONTRACT, AND THERE WAS NO AGREEMENT TO ARBITRATE.
In its first assignment of error, Hartford Fire avers that the trial court erred in determining that Ms. Troutman's claim must proceed to arbitration. Specifically, Hartford Fire claims that Endorsement 51 does not apply to underinsured motorist claims in Ohio, as that endorsement only covers such claims in New Hampshire; therefore, the trial court erred in applying Endorsement 51, including the mandatory arbitration provision contained therein,[1] in the present case. Accordingly, Hartford Fire asserts that, because the mandatory arbitration provision contained in Endorsement 51 does not apply, the trial court improperly ordered the matter to arbitration in contravention of R.C. 2711.01(A). We agree.
A trial court's decision to stay proceedings and compel arbitration shall not be overturned absent an abuse of discretion. Carter Steel Fabricating Co. v. Danis Bldg. Constr. Co. (1998), 126 Ohio App.3d 251,254; Harsco Corp. v. Crane Carrier Co. (1997), 122 Ohio App.3d 406, 410. An abuse of discretion implies that the court's decision was arbitrary, unreasonable, or unconscionable. Harsco Corp., 122 Ohio App.3d at 410.
R.C. 2711.01(A) governs the validity of arbitration provisions within written contracts and provides in relevant part:
 [a] provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.
Generally, if a court is "satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, [the court] shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement[.]" R.C. 2711.02. We note that Ohio favors arbitration as an alternative method of dispute resolution. MGMLandscaping Contractors, Inc. v. Berry (Mar. 22, 2000), Summit App. No. 19426, unreported, at 4. However, "arbitration is a matter of contract and, in spite of the strong policy in its favor, a party cannot be compelled to arbitrate any dispute which [that party] has not agreed to submit." Teramar Corp. v. Rodier Corp. (1987), 40 Ohio App.3d 39, 40.
In the case sub judice, Hartford Fire argues that the trial court erred in applying the mandatory arbitration provision contained in Endorsement 51, because Endorsement 51 does not apply to underinsured motorist claims in Ohio, but rather, applies to such claims in New Hampshire. This court, therefore, must examine the terms of the insurance policy to determine whether Endorsement 51 actually applies to underinsured motorist claims in Ohio.
"Ohio courts have consistently held that insurance contracts must be construed in accordance with the same rules as other written contracts."Grange Life Ins. Co. v. Bics (Sept. 12, 2001), Lorain App. No. 01CA007807, unreported, at 3. "The construction of written contracts and instruments of conveyance is a matter of law." Alexander v. Buckeye PipeLine Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus. Generally, courts presume that the intent of the parties can be found in the written terms of the contract. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638. If a contract is unambiguous, the language of the contract controls and "[i]ntentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence." Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53. If, however, "a contract is ambiguous, parol evidence may be employed to resolve the ambiguity and ascertain the intention of the parties." Illinois Controls, Inc. v. Langham (1994),70 Ohio St.3d 512, 521. Therefore, "[p]arol evidence directed to the nature of a contractual relationship is admissible where the contract is ambiguous and the evidence is consistent with the written agreement[.]"Id. at paragraph two of the syllabus. "Where the language in an insurance policy is ambiguous and susceptible of more than one meaning, the policy will be liberally construed in favor of the insured and strictly against the insurer who drafted the policy." Holliman v. Allstate Ins. Co. (1999), 86 Ohio St.3d 414, 418.
In the case at bar, it appears that, based upon the language and structure of the policy, Endorsement 51 does not apply to underinsured motorist coverage in Ohio, but rather, applies to such coverage in New Hampshire. As a preliminary matter, we note that the insurance policy issued to Quaker State explicitly states that the Commercial Auto Coverage part of the policy consists of the declarations, the business auto coverage form, and any endorsements issued to form part of the policy. In the schedule of coverages, which is contained in the declarations section, the policy provides for uninsured and underinsured motorist coverage. Regarding the limits of such coverage, the schedule of coverages points to Form HA2102, which lists the limits of uninsured and underinsured motorist coverage for certain states. Each of the states listed in Form HA2102, except New Hampshire, has a separate endorsement setting forth the terms of the uninsured and/or underinsured motorist coverage. Significantly, Ohio is not one of the states listed in Form HA2102, while New Hampshire is so listed. Moreover, if Endorsement 51 does not apply to uninsured or underinsured motorist coverage in New Hampshire, then New Hampshire is the only stated listed in Form HA2102 that does not have a separate endorsement setting forth the terms of the uninsured or underinsured motorist coverage. Thus, it appears that Endorsement 51 applies to New Hampshire and not Ohio.
In addition, the policy contains numerous endorsements that are generally listed alphabetically by state. Endorsement 51 is entitled "UNINSURED MOTORISTS COVERAGE" and is located between "NEBRASKA CHANGES" and "NEW HAMPSHIRE CHANGES IN POLICY[.]" As Endorsement 51 is located between Nebraska and New Hampshire and the endorsements are generally arranged alphabetically by state, it appears that Endorsement 51 does not apply in Ohio. Furthermore, the endorsement entitled "NEW HAMPSHIRE CHANGES IN POLICY" ("New Hampshire endorsement"), which directly follows Endorsement 51, seems to make specific amendments to certain paragraphs of Endorsement 51, because the amendments enumerated in the New Hampshire endorsement directly correspond to sections of Endorsement 51. Based upon a careful review of the language and structure of Quaker State's insurance policy with Hartford Fire and liberally construing the policy in favor of the insured, we conclude that Endorsement 51 does not apply to underinsured motorist coverage in Ohio, but rather, was intended to apply to such coverage in New Hampshire.
Assuming, however, that the policy is ambiguous due to the fact that Endorsement 51 is generically entitled "UNINSURED MOTORIST COVERAGE," while other endorsements clearly identify to which state they apply, we nevertheless find that Endorsement 51, including the mandatory arbitration provision contained therein, does not apply to Ms. Troutman's underinsured motorist claim. As previously discussed, if an insurance policy is ambiguous, "parol evidence may be employed to resolve the ambiguity and ascertain the intention of the parties," so long as the parol evidence is not inconsistent with the terms of the policy. IllinoisControls, Inc., 70 Ohio St.3d at 521. Here, Hartford Fire presented the trial court with affidavits, in which a representative of Quaker State attested that Quaker State did not contract with Hartford Fire for underinsured motorist coverage in Ohio. The representative of Hartford Fire Insurance attested that Endorsement 51 actually applied to uninsured motorist coverage in New Hampshire, not Ohio, and attached a letter dated February 28, 1997 to her affidavit, in which certain changes to the insurance policy were noted. Specifically, the letter states that, regarding New Hampshire, "Uninsured Motorist Coverage CA 21 17 12 93 replaces CA 21 17 12-90[.]" Form CA 21 17 12 93 is Endorsement 51. Therefore, liberally construing the policy in favor of the insured, we are nevertheless compelled to conclude that, based upon the language and structure of the policy and the additional materials submitted by Hartford Fire, Endorsement 51 does not apply to underinsured motorist coverage in Ohio. Accordingly, we find that the trial court erred in applying the mandatory arbitration provision contained in Endorsement 51 to the present case, and therefore, improperly ordered the matter to arbitration.[2] Hartford Fire's first assignment of error is sustained.
 B. Second Assignment of Error THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANTS' MOTION FOR RELIEF OF [sic] JUDGMENT OR ORDER WHERE NON-ARBITRATABLE INSURANCE COVERAGE ISSUES WERE NOT RESOLVED BEFORE THE CASE WAS ORDERED TO ARBITRATION.
Hartford Fire asserts that the trial court erred when it "overruled" its motion for relief from judgment pursuant to Civ.R. 60(B)(5). For the reasons that follow, we decline to address this argument, as it is not yet ripe for review.
On May 3, 2001, Hartford Fire filed a motion for relief from judgment pursuant to Civ.R. 60(B)(5), claiming that "non-arbitrational [sic] insurance coverage issues remain unresolved and other necessary parties must be joined prior to submission of the case to arbitration." On May 7, 2001, the trial court issued an order, granting Ms. Troutman leave to file a response until May 21, 2001. On May 18, 2001, while the motion was still pending, Hartford Fire filed a notice of appeal from the April 20, 2001 decision regarding arbitration.
Hartford now asserts that, as the trial court did not rule on the Civ.R. 60(B) motion, it is deemed to have been overruled under State exrel. The V. Cos. v. Marshall (1998), 81 Ohio St.3d 467. In Marshall, the Ohio Supreme Court wrote that "when a trial court fails to rule on a pretrial motion, it may ordinarily be presumed that the court overruled it." Id. at 469 (presuming that the court of appeals overruled a motion to compel a deposition, although that court did not expressly rule on the motion before making a summary judgment determination and issuing a writ of mandamus). Civ.R. 60(B), however, is not a prejudgment or pre-decision motion, as it provides a procedure through which a party may obtain relief from "a final judgment, order or proceeding" for certain enumerated reasons. Furthermore, in the present case, the trial court clearly intended to rule upon Hartford Fire's Civ.R. 60(B) motion, as evidenced by the fact that the court granted the plaintiff leave to file a response by May 21, 2001. Before the trial court had the opportunity to rule upon the Civ.R. 60(B) motion, however, Hartford Fire filed a notice of appeal from the April 20, 2001 decision, thereby divesting the trial court "of jurisdiction to consider [the] Civ.R. 60(B) motion for relief from judgment." Howard v. Catholic Social Serv. of Cuyahoga Cty., Inc. (1994), 70 Ohio St.3d 141, 147 (further holding that "[j]urisdiction may be conferred on the trial court only through an order by the reviewing court remanding the matter for consideration of the Civ.R. 60(B) motion"). Hartford Fire did not request that this court stay the appeal and remand the case to the trial court for consideration of its Civ.R. 60(B) motion.
Based on the foregoing, we decline to presume that the trial court overruled Hartford Fire's Civ.R. 60(B) motion. Accordingly, as the Civ.R. 60(B) motion is still pending before the trial court, the issues raised in this assignment of error are not yet ripe for review; therefore, we decline to address them. See Cochran v. Norton (Aug. 1, 2001), Summit App. No. 20418, unreported, at 20 (discussing the ripeness doctrine).
 III.
Appellants' first assignment of error is sustained. Appellants' second assignment of error is not yet ripe for review, and therefore, we decline to address it. The judgment of the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this decision.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
SLABY, J., WHITMORE, J. CONCUR.
[1] For the purposes of this appeal, we assume, without deciding, that the arbitration provision contained within Endorsement 51 is a mandatory arbitration provision as the trial court found.
[2] This court expresses no opinion as to whether underinsured motorist coverage arose in this case by operation of law, pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660,665, as that issue is not presently before this court.